Let's call our first case, which is 17-3122, United States v. Christy. Ms. Nichols? Good morning, Your Honors. Good morning. I'm Paige Nichols, here on behalf of Denise Christy, the appellant. As Your Honors know, we've raised four issues in the brief. I would like to begin by discussing the prosecutorial misconduct issue, which is issue number one. And specifically, I'd like to speak briefly – I know I will need to get to prejudice, and I intend to do that – but I would like to speak briefly to that first category of misconduct about the statements that Ms. Christy would not accept responsibility. And I think it's important to talk about this because the government does not concede that those statements were improper, and so I'd like to speak to that briefly. Four times, once during opening statement and three times during rebuttal argument, the prosecutor told the jurors they needed to hold Ms. Christy accountable because she would not take responsibility herself. The government says that's not a comment on her not confessing and not pleading guilty. It's simply a comment on her not taking responsibility. But I'm puzzled as to what that might mean if not what we usually think of as taking responsibility, which is confessing and asking forgiveness and making amends and all those things. And I'm pretty sure the jury understood that this was a comment on her not confessing because in the prosecutor's – the finale, basically, of his rebuttal closing argument, he told the jury, I enjoy a case with a confession. A confession is an acknowledgment of wrongdoing. And then the prosecutor launched into his fourth time when he asked the jurors to convict Ms. Christy and hold her responsible because she won't take responsibility herself. And so what concerns me about the government not confessing at least misconduct on this point is if the government is right that it was okay in this case, then it's basically okay in every case for a prosecutor to argue that the defendant has refused to take responsibility. And the government doesn't really point to anything. So the Jackson case, I want to touch as well because in the Jackson case, this court held that a statement that the defendant needed to man up was okay. But those were very different circumstances because the Jackson defendant had in fact confessed. That case was a bank robbery and the defendant fled afterwards in a van, I think, and there was a wreck and two people were killed in the wreck. The defendant confessed to all of his conduct and then at trial tried to simply minimize his responsibility for the wreck by saying things like, and the defendant didn't testify there. Mr. Page, does your argument require us to accumulate the statements, the cumulative effect of the various statements rather than, or let me ask you more concretely, is would the statement that you're just focusing on be reversible, plain air, standing alone, or do we need to stack the rest of them for purposes of your argument? The statement that I've talked about where the prosecutor says, I enjoy a confession and then follows it with she won't take responsibility, that one's pretty strong. I think I could argue that that standing alone would require reversal, but I don't intend to argue that because I don't think we need to. We also have the confessed error on the prosecutor's vouching for Ms. Gifford's credibility, which was pretty strong vouching also, and that closed out his initial closing argument. So again, at the end of each one of the prosecutor's closings, there were these improper statements. And so I've asked the court to aggregate them just because it makes more sense and because they also, with the failure to take responsibility, remember that was part of the opening statement. So really it was a theme in the trial that distracted the jurors from the evidence. Would it be fair for us to analyze this like a cumulative error argument like we frequently see in our capital cases? Yes, I think that's exactly right. And that's basically what I think the Anaya case suggests to do, especially when you have different types of error occurring at different points in the trial. And I mean, I think that's what this court has done in the past is maybe the way I set it up in the brief, walk through each error and determine is this proper or improper, and then ask the question, okay, of the ones that we found were improper, what was their cumulative or aggregated effect on the trial? And so that's the way we would approach that here. If we could move away from that for just a minute, it seems like the most terrible thing that can be said about the failure to take responsibility argument is that perhaps it was in response to the defense strategy of saying that what's really at stake here is the irresponsibility of management of the bank. How would you respond to that? My first response is that that failure to take responsibility argument was made initially in the prosecutor's opening statement before- Well, you probably anticipated what was coming. Sure, but it seems harder to say it's in response to defense counsel when it's before defense counsel has said anything. And then second, the defense was really, the government didn't bear its burden of proof. This is why I'm concerned about approving the statements in this case having a spillover effect such that prosecutors believe that they are free to always make this argument. No, at no point during the prosecutor's closing argument does he link that failure to take responsibility with who was in charge of what at the bank. It was definitely a more general statement. And I did point out the prosecutor's argument at sentencing. I recognize that, of course, the jurors didn't hear that argument. But the reason I pointed out is to show that this was indeed, if this Court is going to take the prosecutor's intent into account, which the government asked it to do, that this prosecutor was mad at this defendant. And it's, it feels clear to me during the closing arguments at trial, but it becomes extra clear at sentencing when he asks the judge to give her a high-end guideline sentence because she stuck out her jaw and refused to plead guilty. Counsel, could I ask about your argument regarding the money laundering? Yes. Counsel, does the intent element in the money laundering statute require proof of concealment? It's, it's the fact that it's intent to, to engage in conduct, it's the intent to commit the tax offense. All right. Well, that doesn't sound like concealment. It just sounds like the language of the statute itself, which the government, doesn't the government need to prove that the financial transaction, here it would be the loan payments, that they were made with intent to file a false tax return? Is, would you agree with that so far? Yes. Well, that's what it says. So, all right. So why didn't the government satisfy the intent element by showing that she made small loan payments to mask the fact that she'd taken a large amount of cash from the bank? So I, I think the key is in, so, all right. I, I, I just want to make sure I'm answering the right question. At first I thought Your Honor was asking, in what way does the money laundering statute require some kind of concealment? But then it sounded like maybe Your Honor's interested in more my evidentiary argument about why. Well, ultimately I am. I, part of it is what the government is supposed to prove and the did they prove it? Right. So the first part is, and I think that the other circuits that have had these cases agree that there's, there's, there's some kind of, as, as Your Honor put it, masking the fact that these are illegal funds or masking the fact that I'm actually, more importantly, not going to report this money to the IRS. Because the, it's the, it's the IRS offense that has an element of deceit in it. Because you're making a false statement to the IRS. And if you are putting money in a certain place with the intent to not tell the IRS you have it, it would be odd if you did that thing in an open and notorious manner, like Ms. Christie did here, by taking money and depositing it in her own account, in her own name. She signs her own name on those deposit slips. The deposit slips are in evidence. And short of just putting the money under a pillow, I'm not sure how that distinguishes between pure money spending and money spending with intent to lie to the IRS. Was there something out of the ordinary in the way she made the loan payments? I don't believe so. Was there evidence that the way she made these loan payments was pretty much the same that she made the loan payments before? Or was there something different about them? I don't believe there's any evidence that there's anything different about them. I think that the only evidence of the loan... Now, we do have all these bank records in evidence. But nobody walked through them and said, okay, in these years she made loan payments in these amounts and now suddenly the loan payments are different. The only evidence that was testified to in trial was the particular loan payments that were the subject of these counts. So we don't really have them in context. Weren't they sizable prepayments? Pardon me? Weren't they sizable prepayments aside from your monthly payment? I don't know the answer to that question. I guess that would mean sizable in comparison to what a person in general would normally pay on a loan. I mean, there's no evidence that says these were oddly sized or timed or anything like that. I mean, they just look like straight up... She walks to a bank where everybody knows her and she signs a deposit slip in her own name and she puts this money into an account that's in her own name. I'm just trying to pin down your argument a little bit more based on the evidence. So if you had to complete this sentence, what would you say? I'll start it out. The government or a reasonable jury could not convict beyond a reasonable doubt based on the evidence presented because. You tell me the rest. Because these financial transactions were open and notorious. Nothing about them suggested they were intended to hide money so she wouldn't have to report it to the IRS or to structure a transaction so nobody would notice she was moving this money around. There's no moving money around. They're simply taking it to the bank. I feel that I have not satisfied your honor. I'm not sure. But isn't that fairly common criminal behavior among sophisticated criminals? They all understand that, you know, if I suddenly come into a ton of money and I'm spending like a drunken sailor, that people are going to notice. But if I trickle it in over time, I do it discreetly, it may pass unnoticed. That doesn't seem consistent with the money laundering law as this Court and other courts have interpreted it. Because usually what this Court and other courts are looking for are complicated transactions, structured transactions, transactions that have an extra element of deceit on top of them, which is what the other courts that have construed the tax evasion section of the money laundering statute have pointed out in those cases. There's a point at which it gets reduced to pure money spending. We have a money spending statute, but she wasn't charged under that. I'm wondering if I could rephrase that. Well, can I just ask one other question? And maybe I'm not remembering directly. Did she put the money in her account and then write a check for those things or did she just – Just deposited the money into the loan account in order to pay, make payments on the loans that were in her name. In order to make her account and then write a check. No, no. Could I just ask before you sit down? Sure. How was Ms. Christie wholly denied the opportunity to allocute? That's language from Bustamante, conscious. Because she was not personally addressed by the court. Wasn't she at the beginning of the sentencing proceeding personally addressed? She was. And the judge said, later on, I will come back and ask if you would like to say anything. But when he did come back and ask, he didn't ask her. He asked her counsel. And by the way, there were, I think there were like 40-some pages of transcript between that original statement that the judge made to her and at the point at which the judge spoke to counsel. And counsel, the problem here, and I recognize it's just a subtle one, that is that the judge asked counsel, not Ms. Christie personally, and also used the legalese term allocution. Would you quite like to say anything in allocution without having previously explained to her what allocution was? And Bustamante conscious spoke a lot about the requirement that the address be personal. So did Green, the U.S. Supreme Court case. Mr. Green argued that he was not addressed personally. And the reason he lost was because the transcript reflected the judge saying, do you want to say anything else? And it wasn't clear whether that was directed to the defendant or his lawyer. Here we know only the lawyer was addressed. And that's why we've raised the issue. I'll give you some rebuttal time. I had a question on the materiality argument for purposes of the false entry. I was surprised by this, but I couldn't find any case, I don't think you cited any case where a court since Nader has addressed that. Is it Tabula Rasa? I think so. Why is that? Yeah. You know, I don't still think that statute is charged that much. There are other bankrupt statutes that get charged instead. Maybe. I agree. I mean, I looked. I'm sure. OK, well, very good. I'll give you some rebuttal time. Let's hear from the government. Good morning, Your Honors, and may it please the court, my name is Jared Magg. I'm an assistant United States attorney for the District of Kansas and represent the United States in this matter. Obviously, there is a lot to get to today, and I want to be responsive to the court's questions. So I think we probably ought to start with the misconduct issues. That seems to be the most prevalent issue for the court's consideration. Can I ask a question that sort of maybe is an umbrella for this? Are you familiar with the prosecutor in Oklahoma by the name of Macy? I'm sorry, the prosecutorial? In Oklahoma, who by the name of Macy. Yes, sir, I am. Very notorious, repeatedly blocked the line, sometimes over the line, particularly in death penalty cases. The Oklahoma Court of Criminal Appeals would look at it and say, well, this is a mistake. You shouldn't do this. Don't do it again. But we affirm anyway, happened repeatedly, repeatedly, repeatedly. So I see shades of that here. Maybe this is a one time thing for the prosecuting attorney, but it was a lot of questionable things that were done here, it seems like. Understandably, and we did our best to try to address that. But I think the response that I would give in the context of this case is the pitfalls of looking at it in a vacuum. I think when looking at the transcript from beginning to end and reading the transcript, reading the questions, looking at each individual specific point in time where the allegation is made and look at the context of where it was made vis-a-vis this totality of the circumstances, cumulative approach. I think it bears out that it is not as egregious as the defendant would make it out to be. Because I think it's easy to look at it in a vacuum. When you look at it on the briefs and you look at it simply in order of all of these statements, and it appears that they all occur at virtually the same time. Of course, they don't. They occur throughout a long, long trial. And I think at the same time, giving the jury some credit to filter out the hyperbole. I don't think it's lost on the court that juries hear an awful lot from these attorneys in a very difficult case. And they were very passionate about their opinions. At the same time, giving the jury some credit to filter that out, I think, is important under the circumstances. And I think, Judge O'Brien, you sort of hit on the point of what it was that the defendant was attempting to present to the jury in this case, which was this was the bank's problem. It was the chaotic nature of the bank that led to this. When, in fact, you're looking at a very small bank with only a few people whose responsibilities were well-defined. Her responsibility was well-defined as the individual who was managing the vault in this case. And under those circumstances, I think it's proper under the circumstances to see what the prosecutor's intent was by saying, look, she's not taking responsibility. But at the same time, to point out what they're attempting to say is that, look at what the prosecutor said at sentencing. It's clear that that was his intent. But I think the contrary to that is equally or more true. It shows that he appreciated the difference between a statement that is that pointed about her not taking responsibility by standing up and pleading guilty versus what he did say during the trial of this matter, which is benign comparatively, is, I think, shows the appreciation of the difference. And he knew that under the circumstances of the case. It wasn't as if he was telling the jury, look, she's wasting your time by not pleading guilty and not taking responsibility in that context. So I don't think and I think that's what they want you to believe is that that is that was the import of her of his statements in this context was that she is simply she should just stand up and take responsibility by pleading guilty. That's not what he said. And I think letting the jury filter that out and giving them the credit to filter that out is is proper. And we're going to talk about the vouching thing. But and and accepting what you've said, how would you explain that his conduct in disparaging defense counsel and aggrandizing himself? Well, I would I would have brought this forward if if if I'd had any of that's my obligation. Again, in the in the context of when he said that, it appeared that he was surprised by the fact that the information was coming out through the defense attorney and that he wanted the jury to know, look, I'm not trying to hide anything from you. If it was my responsibility to bring this information to your attention. If I had if if I had known that because it and it was simply his ability to. Was there any facts and evidence to support that? On that particular point, I think it was only borne out of what the defense attorney was saying. And that was his response to that. I don't know that that's necessarily a situation that that you could fault the prosecutor for saying, look, it is my responsibility as a representative of the government to prove to you and not hide the ball. I mean, that's what I'm not trying to do. So I think I'm not sure that that is a situation necessarily that that should hold itself out as as something that is egregious under the circumstances. But at the same time, I understand looking at each of these in in total, as Chief Judge Semkevich has mentioned. And this court is certainly available to do that and looking at it in total. At the same time, remember, too, I think you have to give some credit to the jury looking at this and understanding that they did find her not guilty on some counts. So that gets into the issue, I think, of prejudices. What what is the prejudice here when you weigh it up against some of the the overwhelming evidence in this case? Does that bring us then into a harmless error? Is that where we're going now? If we if we look at the prejudice issue, if if if that is something that has to be addressed. And I think it has to be under the circumstances, because clearly we have have conceded at least on the one point that the comment was error. And so at some level, there has to be a prejudice analysis. And under the circumstances of this case, I think it's very clear from the record that that we're talking about a situation that was was quite obvious of someone who was embezzling funds from this institution that really didn't appear to be an issue for the jury. I mean, the issues before this court really are very nuanced legal issues. We're not really getting into a sufficiency of the evidence question here. That's they have not even raised that. This is really just some very nuanced legal issues about whether or not the crimes that she committed met the elements of those offenses. Well, we have a sufficiency of the evidence on the money laundering. Understandably, yes. Under the context, though, of whether or not the elements of the statute were met by by her conduct, I guess, from that standpoint, I didn't look at it as more or less a a sufficiency in the sense of what I traditional. So I was understanding your argument that, well, this really isn't a sufficiency question where the the the comment was error. The conduct of the prosecutor might have been a tipping point. Is that what yes. In the context of of, you know, this isn't necessarily a question of, in our opinion, of who who did you know she is that was the target of the investigation. It's quite clear the jury understood that she was the one that was embezzling the money. All right. Question for this. Let me let me move to the money laundering. What what was the evidence of intent to support that charge? Well, so, you know, we rely primarily on on on Zangie for this point. And I just want the evidence. Right. So she she embezzles the money. And she is, as I think Judge O'Brien appreciated the fact that she's holding the money out and trickling it into the accounts. She's paying it in cash. The evidence is that that was that intent to file a false tax return. Well, Zangie said, isn't that what you have to link it to? No. As Zangie said, the fact that she's not filing it, the fact that she has the income and she's holding it out and not reporting it is sufficient enough under the circumstances. But what if she'd used the money to buy groceries? Would that have made any difference? What if she used it to pay for a car? What if she used it to pay dues? Why isn't this just pure money spending? I can I can appreciate the argument that they're trying to make that it is money spending. But at some point, the money moves from one point from the embezzlement side to the actual expenditure side. Well, that's that's that's that's the only way you're even going to get to a charge. But but but where is the proof that when she made the loan payments, that it was done with the intent to file a false tax return? Well, I think it goes back to what the court said in Zangie. The fact that she her failure to report it is sufficient enough that I'm not sure. Then I'm back to the groceries. Right. She goes to the grocery store, pays cash, and you're going to charge her with money laundering. Under those circumstances, I think that would be a harder case to prove to a jury. Unquestionably, the question is whether or not it's actually different. I mean, people people have payments they have to make for a whole variety of things. And and it's money laundering going to turn on whether you go into the bank or go into the grocery store. Well, the intent, of course, is that she's attempting to conceal where the proceeds are coming from. So at some point she needs to clean that money up. How she does that by either paying for groceries or paying off the loan. Zangie is your best case. Is that what you're telling? I'm sorry. Zangie is your best case? It is. Unquestionably, it is. But I think if I can answer the question directly, and I don't want to be evasive here to answer your question directly, if she's paying for the groceries. Yes, it is a total the intent to clean that money up from the ill gotten gains is how she is doing it. How she is laundering that through. Whether or not that becomes spending under the tax. Why doesn't that then become a rule that if someone who is embezzled money will always be guilty of money laundering if they spend any of the money? If their actions are the intent. Yeah. If the spending is the action to clean the money up to get the appearance of it or the known appearance of it to be from the suspicious activity and cleaning it by just spending it off. I see that point. And I think our position is, yes, that is still money laundering under the circumstances. I wonder if a different hypothetical would be useful. What if instead of buying groceries, the person was a gambler and spent an awful lot of cash gambling and lost a lot of cash gambling, but also made some money gambling? Which I think is more common. And I think that money went into their account. Right. I think that's a better example of cleaning money of actually because we actually see that more often in the in the criminal underworld is where the money is spent in that fashion, because then it clearly appears that it's coming back into his pocket. In a fashion that you could trace to look, this is gambling proceeds, that is a more traditional example of money laundering. I guess the question here, though, is, is whether or not simply spending it. Is enough. And that to answer Judge Mathison's question directly, I think our position is, yes, as long as it's cleaning the money and getting rid of where it is coming from to to somehow take the scent off. That is a poor gambler and never had any winning. Well, it's like buying groceries in or what? Either way, their their attempt is to conceal the suspicious activity, to conceal the embezzled funds themselves. And the act alone is what is going to get them into it's either going to be attempted money laundering or money laundering itself. You'd have to open a car wash like Walter White did. Breaking bad. Unless the court I again, I hope that I'm being responsive to the court's questions on the on the misconduct issue. But I think that, again, our point is, is is when the court goes back and reviews this and looks at the prosecutor's statements is not to view them in a vacuum is to look at them and to avoid those pitfalls that I think exist when they when you do view them in a vacuum. Why shouldn't we why shouldn't we infer a materiality element based on the Nader case for the. Yeah. I can't disagree that that was that was a very tough one for the government to there just isn't any case law out there. And our position on on that is. So the statute you have as what we what we charged it as is the deception. So you get back into the disjunctive and there was no charge of fraudulent activity. There was just the deceit. So when you when you pull that out and look at it in that context, there's clearly not a materiality. Any case that the defendant could point to that says there's absolutely needs materiality for deceitful activity. They can clearly show it for fraud. But we didn't charge it as fraud. We charge it as deceit. So if you require a materiality instruction for deceit, then you, I think, are going against the intent of what of what the statute is there for that there really does not require and no court has held that there is a required materiality element for something such as deceit. So you would be reading into reading a requirement into it that doesn't exist. And I see that my time is very clear. Sort of a common sense element to that, that if you make some kind of false but innocuous statement, you ought not to be facing felony charges for it. Well, I guess my answer was even if you intended to see even if you didn't intend to see or even if you did intend to see, but that it was just an insignificant fact. Well, I think that the I think the government would have a very tough time to prove that, but there certainly isn't a material element to show when someone like what she was doing was signing false bank statements that that somehow that there has to be a material element on the receiving end of that, the the action alone is designed is designed to deceive why there has to be a material element. The courts have never said one for deceit. There has to be. Congress doesn't appear to require it in any circumstance. Only in the fraud context is there have to be a materiality aspect of it. And it I guess, for lack of a better analogy, it's self-evident, I guess, in that context in that someone is is filing a false document, in this case, the bank statement, which was designed clearly to deceive her superiors. Right. What if there's only ten dollars? I don't think that matters. At least the case law doesn't suggest that it does. And again, as Chief Judge Temkevich says, you make me the first panel to actually address this issue. We can clean that up. Possibly. I don't envy the process. I'll give you that. I have just one quick question about the allocution. You've conceded the first three elements of plain error under Bustamante to get past the fourth. My understanding is you've got to show an unusual circumstance to get to get past. Right. And what is it? I mean, it seems to me we drew a pretty a pretty firm line in Bustamante that you need to invite the defendant personally to allocute. And that that didn't happen at the critical moment. Right. And I understand that. And I think it's a close call, candidly. But when the court said wholly denied in this case, we know that Judge Crabtree directly addressed her and she responded to him. I understand you're going to ask me later whether or not I want to give a statement. So she acknowledges I have that right. And so we're looking at that in that context to say that somebody is wholly denied when they when they affirmatively acknowledge, I know I can say something. And then she simply goes through her lawyer to say, I don't want to say anything. It would be different in the context if when he was addressing Miss Christie early and the judge and and and the attorney stepped in and said something. But in this case, she did an affirmative personal acknowledgment. And I think under that circumstance, I think we win on the fourth problem. Counsel, thank you. Paul, could you give Miss Nichols three minutes? Could I just ask you a couple of questions? Yes. Could you begin? And returning to my comments about Prosecutor Macy, has any kind of a disciplinary action been filed against the prosecutor that you're aware of? Not that I'm aware of. That did happen with Macy. That's why I don't know whether it happened with Macy before the first time. I'm sure you are. I think that's I think the practice of the Kansas Disciplinary Commission is to watch cases for misconduct findings. At least back when I was practicing in the Kansas Supreme Court, that was my understanding of how they were operating. Could I also ask then about, just very, very briefly, what if this were a 2255 claiming ineffective assistance of counsel because her attorney didn't tell her that or that because the judge didn't object that the judge, pardon me, that her attorney didn't object, the judge did not address her personally. Right. And then if there was a 2255 hearing and the attorney had the opportunity to testify, would say we talked about that specifically, she told me that she did not want to allocute, and authorized me to say that to the judge. Where does that leave us? They would probably put you on the third or fourth prong of plain error as setting the case apart from Bustamante-Conchas. We just don't have that, you know, we just don't have that record here. What I'm suggesting is that maybe in a really tight case like this, 2255 is the best way to address it. It may be. It may be. I think this court hasn't had a chance, as far as I can tell, to address this particular situation since Bustamante-Conchas. I cited a case from another jurisdiction where addressing the attorney instead of the defendant was considered plain error. That's in my opening brief. If I may briefly point out on the money laundering that the Zangas case doesn't actually just say, if you spend ill-gotten gains and you file false statements on your taxes, that's it, you've committed money laundering. They actually speak at length about the willfulness required both for the tax offense and the money laundering offense, and you'll see that part of the case set out in the government's brief at pages 38 and 39. Well, how would you distinguish that case from this case? I think I distinguished it at length in our reply brief, but the point I want to make about the facts here is simply that, especially in light of the examples that this court was offering, she did the least sneaky thing she could do by spending that money, those amounts, in her own name in a bank where there's a record. If she'd spent it on groceries, nobody would have known. If she'd spent it at the gambling table, nobody would have known. She did. There just wasn't any proof of it. She's not charged with it. Fair inference. But my point is, if we're talking about hiding money so you don't have to report it, that's, you know, this again is, it's why I'm calling it the least sneaky thing, because there are names on it. So that was the point I wanted to make there. I promised I would address harmless error on misconduct and I didn't get to it, so I would just like to make very quickly three quick points. First, that the plain error is less rigid in cases involving potential constitutional error, which this involves because of comments on her rights. Two, what we've already talked about, wanting the court to consider the misconduct in the aggregate. And three, it's not a sufficiency analysis. The prosecutor says they didn't say that the evidence was insufficient, at least of bank embezzlement. We don't have to say that because harmless or the prejudice analysis is not a sufficiency analysis. The question is, was the misconduct flagrant enough to influence the jury to convict on grounds other than the evidence? I think I've gone past my time. Thank you, counsel. We appreciate it. That was very helpful. Counselor, excuse me, we appreciate the fine arguments and the case shall be submitted.